Scott, J.
Had Samyn, the plaintiff in error, a legal right, under his contract, by force of the statute of March 14,1850, to recover a judgment for the unpaid principal of the $4100 note, with interest thereon from maturity, at the rate of tea per cent, per annum ? The provisions of the act' referred to are as follows :
Sec. 1. “ That the parties to any bond, bill, promissory note or other instrument of writing for the payment or forbearance of money, may stipulate therein for interest receivable upon the amount of such bond, bill, note or other instrument, at any rate not exceeding ten per cent, yearly.” . . .
Sec. 2. “ That upon all judgments or decrees rendered upon any bond, bill, promissory'note, or other instrument aforesaid, interest shall be computed till payment, at the rate specified in such bond, bill, note or other instrument, not exceeding *222 ten per centum as aforesaid; or in case no rate of interest be specified, at six per centum yearly.”
It was only in virtue of this statute tnat executory contracts for the payment of interest at a higher rate than six per cent, became legal and obligatory in this state. Does the contract of the parties bring this case within its terms ?
It is quite evident that Samyn agreed to lend, and Griffey to borrow, four thousand dollars, for the period of forty-two months, and both agreed that interest should be paid thereon during this time, at the end of every three months, at the rate of ten per cent, per annum. And had this agreement been evidenced by a note or notes for the principal, stipulating therein for the payment of interest at the rate of ten per cent, per annum, then interest would, under the statute, have been computed, at the same rate, after the maturity of the note as before. But instead of doing so, the parties proceeded to carry out their agreement in such a manner as would make any stipulation for the payment of interest, as such, unnecessary. The interest to accrue, was treated as on the same footing with the principal sum, as an existing indebtedness, created by their contract, debitum in presentí, solvendum in futuro; and thirteen notes, each for $100, and payable at intervals of three months, severally (as the interest would become due), were executed by Griffey, and also another note for $4100 payable at the expiration of the time for which the lean was made. This last note, doubtless, represented the sum borrowed and the last installment of interest, which both became payable at the same time. None of these notes contained any stipulation whatever for the payment of interest, as such, upon the sums for which they severally called. It was never intended that they should bear interest before maturity, and they contain no provision as to the rate to be paid thereafter. But it" is said, that Samyn’s cause of action in this case is founded on his mortgage, and not on the notes, and that the condition of the mortgage provides for the payment of interest at the rate of ten per cent. This position, however, can not be maintained. The lien created by the *223 mortgage is an incident to the debt which it was intended to secure, and can only subsist with it. The notes were intended to be, and are, the proper evidence of the existence of the debt, and if they were discharged or released, we do not see how an action could be maintained on the mortgage alone. But without discussing this question further, it is enough to say that the mortgage contains no express promise of Griffey to pay any sum whatever; that its sole condition of defeasance is the payment of these notes ; and that it contains no allusion whatever to interest, except a parenthetical recital of the undisputed fact, that interest at the rate of ten per cent, per annum entered into, and formed part of the consideration for which the notes were given. And the insuperable difficulty which this part of the plaintiff’s claim encounters, arises from the fact, that the statute does not make the allowance of a special rate of interest upon evidences of indebtedness after maturity, depend upon the consideration for which they were executed, but upon the stipulations of the parties in that behalf, in the written instrument which evidences the debt. Here, we-find no such stipulations.
In so far, then, as the contract remained executory, we think the court below did not err, in refusing to allow the claim of the plaintiff, Samyn, to interest on the notes after maturity at a rate greater than six per cent.
Another question is presented in the case, in regard to payments of interest which had been voluntarily made by Griffey to Samyn, at the rate of ten per cent, after the maturity of the notes.
The ten per eent. law of 1850, was repealed by an act passed February 25, and which took effect from and after the first day of April, 1859. (S. & C. Stat. 744.) Some of these payments of interest (perhaps three of them), were made before the repeal of the act of 1850 took effect, and others were made subsequently. The act of February 18, 1848, prescribes “ that in all actions for the recovery of money, hereafter prosecuted in the courts of this state, all payments of money or property made by way of usurious interest, whether *224 made in advance or not, shall be deemed and taken, as to the excess of interest above the rate allowed by law, at the time of making the contract, to be payments made on account of principal; and the said court shall render judgment for no more than the balance found due, after deducting the excess of interest so paid,” etc. (S. & 0. Stat. 744).
Under the construction, given by the court below to this statute, all the payments of interest made by Samyn were regarded as payments of usurious interest, and were applied, as to the excess over six per cent., to the reduction of the principal. This construction of the statute would undoubtedly be correct, were it not for the subsequent act of 1850, which authorized contracts for a rate not exceeding ten per cent. But under the latter act, interest, at a rate which it permitted, was not, as we think, usurious. When it took effect, the payment of interest at the rate of eight, nine, or ten per cent, was no longer in contravention of any declared public policy. It could not be unlawful to do that which a party might have legally bound himself to do. Why should he not be permitted, by a valid payment of interest, at a rate allowed by law, to save the trouble of any written stipulation on the subject?
In the case before us, there is no evidence of any contract for the payment of interest at a special rate, after the maturity of the debt, except the fact that such payments were, from time to time, made. Though such payments could not have been enforced for want of a contract evidenced a? the statute required, yet so long as it was in the power of the parties to make such a contract valid by express written stipulation, it was equally in their power to make it valid by actual execution. In our judgment therefore the payments of interest made while the 'ten per cent, law remained in force, were not in excess of the rate allowed by law at the time, and should have been allowed to stand, without deduction; and to this extent the judgment of the court below will be modified.
As to the payments subsequently made, when the statute no longer permitted contracts for more than six per cent.', they can not be deemed valid unless made in pursuance of a con *225 tract entered into while the ten per cent, law remained in force. As no such contract is shown, we think there was no error in applying the excess of those payments over six per cent, to the account of principal.
Judgment accordingly.
Brinkerhoee, C.J., and White and Welch, JJ., concurred.